Morey vs. Fish Bros. Wagon Co. and another.     •

BARDEEN, J., took no part.

---

MOREY, Appellant, vs. FISH BROS. WAGON COMPANY and another, Respondents.

*December 8, 1900 — January 8, 1901.*

*Corporations: Sale and pledge of stock: Equity: Compelling recognition of stockholder's rights: Declaration of dividends: Fraud: Limitation of actions: Jurisdiction of circuit and county courts: Estates of decedents.*

1. A complaint showing that a contract by which a corporation was to sell shares of its stock to plaintiff had been so far performed as to place the title to the shares in plaintiff, though they were left in the hands of a pledgee to secure payment of plaintiff's note for

Morey vs. Fish Bros. Wagon Co. and another.

the purchase price, and that the action was brought to compel recognition of his rights as a stockholder, which had been fraudulently or wrongfully denied him, and for incidental relief by way of an accounting to ascertain the profits accruing upon his stock which should have been declared as dividends and applied upon his said note, is *held* on demurrer to state an equitable cause of action against the corporation, although the heirs of the pledgee, who are alleged to hold all the stock of the corporation, but do not appear to have any title to plaintiff's shares, are not made parties to the action.

2. Although the action was not commenced until more than nine years after the making of the contract and the pledging of plaintiff's shares, yet, plaintiff's right to the shares not having been denied until a short time before the commencement of the action, and his note for the payment of which they were pledged not having been paid by the application of declared dividends as provided in the contract, the action was not barred either by the six-year statute of limitations (subd. 3, sec. 4222, Stats. 1898) or by laches.

3. Although courts will not, as a general rule, interfere with the discretion of the directors of a corporation as to the declaration of dividends, yet when it appears that they are guilty of fraud or bad faith or a wilful abuse of their discretionary powers either in declaring or in refusing to declare a dividend, a court of equity will interfere and compel the proper action. [Whether the directors must be joined as parties to the action, in order to obtain such relief, not determined.]

4. The circuit court has jurisdiction of an action for equitable relief which is obtainable only in a court of general jurisdiction, even though the interest or right in question is connected with the estate of a deceased person, which is in course of administration in the county court.

APPEAL from an order of the circuit court for Milwaukee county: EUGENE S. ELLIOTT, Circuit Judge. *Reversed.*

This is an action in equity brought by the plaintiff against the *Fish Bros. Wagon Company,* a private corporation engaged in the manufacture of wagons at Racine, Wis., and *O. W. Johnson,* as administrator of the estate of O. R. Johnson, deceased. The complaint alleges, in substance:

That on the 8th of May, 1889, the plaintiff entered into a

written contract with the defendant *Fish Bros. Wagon Company*, of which the following is a copy:

"Racine, Wisconsin, May 8th, 1889.

"*Mr. D. J. Morey* — DEAR SIR: In accordance with our talk with you the other day, we herewith make you the following proposition: For your services in our employ in any capacity as may hereafter be determined upon, we will pay you a salary of eighteen hundred ($1,800) dollars per year, and in addition we will agree to secure for you one hundred and fifty (150) shares of stock of this company; you to pay us for the same out of the earnings or dividends of the company, as rapidly as declared, with interest at the rate of seven per cent. (7%) per annum from January 1st, 1889. Evidence of such indebtedness to be declared on your part by giving us your note dated January 1st, 1889, bearing interest at the rate of seven per cent. (7%) per annum, payable annually, for six thousand ($6,000) dollars. It being understood that said interest, as well as principal, is to be paid out of the dividends of the company, and not deducted from your salary or expected from your other resources, unless the latter furnish you with sufficient income to meet such indebtedness, which is to be determined by yourself. As security for such unpaid stock, you are to leave with us the certificate for same until it is paid for.

"Yours respectfully,

"FISH BROS. WAGON COMPANY,

"by *O. W. Johnson*, Treasurer.

"I accept the above proposition. D. J. MOREY."

That immediately after the execution of said contract, and on the same day, the plaintiff executed his promissory note, dated January 1, 1889, for the sum of $6,000, with interest at seven per cent., payable annually, in accordance with the conditions of said contract, and delivered said note, by direction of the defendant corporation, to said O. R. Johnson, and at the same time there was placed in the hands of said

O. R. Johnson, in accordance with said contract, 150 shares. of the capital stock of the *Fish Bros. Wagon Company*, of the par value of $100 per share, and a receipt therefor was. delivered to the plaintiff, in words and figures as follows:

"Racine, Wisconsin, May 8th, 1889.

"Due *D. J. Morey* 150 shares stock of *Fish Bros. Wagon Co.*, held by me as security for payment of a certain note· of $6,000, dated January 1st, 1889, as per terms of contract. made this day between *Fish Bros. Wagon Co.* and *D. J. Morey*.                              "O. R. JOHNSON,

"by *O. W. Johnson.*"

That after the execution of said papers the plaintiff began to work for the defendant corporation on the same day as. general superintendent and assistant superintendent of certain departments, and continued so to work until about the 1st day of November, 1893. That he faithfully discharged his duties during all of said time, and that during said time the business of said defendant corporation was prosperous and successful, and that it earned large profits, and that on the 1st day of November, 1893, his services were temporarily dispensed with by the officers of the corporation, for the reason, as they alleged, of the general depression in business. matters. That from said 1st day of November, 1893, until the bringing of this action, the plaintiff has held himself in readiness to perform the duties required of him under said contract, and frequently tendered his services to said corporation, but. has been refused employment, and said defendant corporation still refuses to employ him. That said *Fish Bros. Wagon Company* is a domestic corporation, with a capital stock of $250,000, divided into 2,500 shares, of the par value of $100 each, and that such stock, by reason of the profits arising from said business, has a cash value largely in excess of its. par value, but that the same has never been for sale upon the market, and cannot be procured except by private sale, and none has ever been offered for sale. That said defend-

ant corporation since the year 1889 has manufactured and
sold wagons and other vehicles to the following amounts:
In the year 1889, about $360,000; in the year 1890, about
$550,000; in the year 1891, about $550,000; in the year 1892,
about $575,000; in the year 1893, about $350,000; in the year
1894, about $300,000; in the year 1895, about $325,000; in the
year 1896, about $300,000; in the year 1897, about $550,000;
and during the year 1898 more than during any other year of
its existence.    That the net profits arising from said business
during the years aforesaid have been largely in excess of
ten per cent. of the gross sales, and that the profits accruing
upon the stock purchased by the plaintiff have more than
paid the plaintiff's said note and the interest thereon.    That
the plaintiff on three occasions prior to the commencement
of this action, viz. October 8, 1898, and in November, 1898,
and on December 28, 1898, demanded of said defendant cor-
poration and of the defendant *O. W. Johnson*, as administra-
tor of the estate of O. R. Johnson, deceased, the delivery of
said 150 shares of capital stock, and also demanded an
accounting by said defendant corporation of the profits of
said business, but that said defendants refused to deliver
said stock and make said accounting, and still refuse to do
so.    That all of the capital stock of said *Fish Bros. Wagon
Company* is now held by the heirs of said O. R. Johnson,
deceased, to wit, Emily Johnson, Otis W. Johnson, Mary
Johnson Abbott, Jennie Johnson, Charles Johnson, Thomas
Johnson, and Frank Johnson, and that said heirs have ab-
sorbed all the earnings and profits of said business, and that
no dividends have been declared, and that said defendants
refuse to account with the plaintiff or declare dividends
earned by said stock, so as to defraud the plaintiff in the
premises, and seek to excuse the delivery of the stock so
purchased by the plaintiff by assuming that, because there
have been no dividends declared, the plaintiff is entitled to
nothing.    That said defendant corporation and its stock-

holders are using all of the funds of said corporation, and refuse to account with the plaintiff for the stock purchased by him, and that, upon a just and true settlement and accounting of the profits of the business, it would appear that the plaintiff's stock had earned a sum very much in excess of the amount of said note.

The relief prayed was that an account be taken of the profits of the business of the defendant corporation, and that the profits upon the stock of the plaintiff be applied upon the plaintiff's note, and that the same be canceled (the plaintiff being ready to pay to the defendant what, if anything, shall appear to be due upon said note), and that the defendant corporation be decreed to specifically perform said agreement with the plaintiff and deliver said 150 shares of capital stock to the plaintiff (the plaintiff being willing to pay anything that appears to be due said defendant upon the accounting), and that the defendant corporation pay to the plaintiff all earnings and profits of said stock in excess of the amount of the plaintiff's note.

To this complaint the defendant *Fish Bros. Wagon Company* demurred on three grounds: first, that the plaintiff has an adequate remedy at law; second, that the complaint does not state facts sufficient to constitute a cause of action; and, third, that the action was not commenced within the time limited by law, to wit, by subd. 3, sec. 4222, Stats. 1898. The defendant *O. W. Johnson*, as administrator of the estate of O. R. Johnson, deceased, demurred upon the same grounds, and upon the additional ground that the court has no jurisdiction of the person of the said defendant or of the subject of this action. The demurrers were heard together and sustained by the court, and the plaintiff appeals.

For the appellant there were briefs by *William E. Lee*, attorney, and *Millard R. Powers*, of counsel, and oral argument by *Mr. Powers*. In support of the complaint they cited *Tucker v. Lovejoy*, 73 Wis. 66; *Walker v. Goodrich*, 16

Ill. 341, and cases cited; *Adams v. Fort Plain Bank,* 36 N. Y. 255; 13 Am. & Eng. Ency. of Law, 726; *Miller v. Drane,* 100 Wis. 4; *Gullickson v. Madsen,* 87 Wis. 19; Morawetz, Priv. Corp. (2d ed.), § 218; *Avery v. Ryan,* 74 Wis. 596; *Johnson v. Brooks,* 93 N. Y. 337; *Francy v. Warner,* 96 Wis. 222; *Meyer v. Garthwaite,* 92 Wis. 571.

For the respondents there was a brief by *Quarles, Spence & Quarles,* and oral argument by *George Lines.* They contended, *inter alia,* that a court of equity will not aid a party who has unreasonably delayed the enforcement of his rights; and this rule is particularly applicable where the property which is the subject of litigation is liable to frequent changes in value, as stocks, oil wells, mining property, and the like. *Rogers v. Van Nortwick,* 87 Wis. 414; *Williams v. Williams,* 50 Wis. 311; *Combs v. Scott,* 76 Wis. 662; *Melms v. Pabst B. Co.* 93 Wis. 153; *Hamilton v. Menominee. Falls Q. Co.* 106 Wis. 352; Pomeroy, Contracts, § 403; 22 Am. & Eng. Ency. of Law, 1043.

WINSLOW, J. The principal contention made by the defendants in support of the demurrers is that the action is one for specific performance of an agreement to sell corporate stock, and that the complaint shows on its face that such performance is impossible, because all of the corporate stock of the corporation is alleged to be held by third persons, not parties to the action, and that for this reason equity will not entertain jurisdiction of the action, but will leave the plaintiff to prosecute his action at law for damages. The radical difficulty with the argument is that, in our judgment, this is not an action for specific performance of a contract to sell stock. The allegations of the complaint show that the executory contract to sell stock was fully performed by the defendant corporation, at least so far as necessary to place the title of the stock in the plaintiff, upon the same day that the contract itself was made. Certificates of the stock were either

made out or obtained by the defendant company, a note was executed by the plaintiff for the purchase price, and with the consent of both parties the note was placed in the hands of Mr. O. R. Johnson, and the certificates of stock were also placed in his hands as collateral security for the payment of the note. Thereafter Mr. Johnson undoubtedly held the certificates of stock in trust for *Morey*, and the note in trust for the corporation, until the note should be paid. *Morey* had title to the stock to the same extent as if the certificates had been actually delivered to him and he had then pledged them to a third person as security for the payment of his note. Both the title and the right to vote pledged stock is in the pledgor unless a complete transfer has been executed. 1 Morawetz, Priv. Corp. (2d ed.), § 483. Thus it appears that the action is not one brought by an outsider to compel the corporation to make him a stockholder, but an action brought by one who is already a stockholder to compel recognition of his rights as a stockholder, which have been fraudulently or wrongfully denied him, and for incidental relief by way of accounting to ascertain what the profits upon his stock rightfully are, and what, if anything, is still due upon his note. Actions in equity for this purpose are not infrequent. 1 Morawetz, Priv. Corp. (2d ed.), § 208; *Telegraph Co. v. Davenport*, 97 U. S. 369. Nor is it any answer to the proposition to say that the complaint shows that all the stock of the corporation is now held by third persons, i. e. the heirs of Mr. Johnson, who are not parties to this action. So far as appears by this complaint, such holders have no title to the stock of *Morey*, even if they in fact have possession of the certificates. Both the corporation and Mr. Johnson were fully aware of *Morey's* ownership of the stock. It does not appear that *Morey* himself ever indorsed the certificates or made any written transfer of them. In fact, the fair conclusion from the allegations of the complaint is that the certificates never manually reached his possession. The statute

requires the indorsement of the owner or his legal repre-
sentative, or a written transfer, in order to pass title to such
certificates. Stats. 1898, sec. 1751. Hence, under the alle-
gations of the complaint, the heirs of Mr. Johnson cannot
be considered as *bona fide* holders of the certificates, nor as
possessing any rights therein beyond the rights possessed
by Mr. Johnson himself, because the reasonable inference
from the complaint is that there has been no indorsement
or transfer of the stock by *Morey* or his legal representative.
They certainly would be proper parties to the action, and it
may well be that, in order to fully determine the whole con-
troversy, it may be necessary that they should be made par-
ties; but there is no demurrer here based upon the ground
of defect of parties, and it cannot be said that a cause of ac-
tion is not stated against the defendant corporation simply
because the Johnson heirs are not made parties.

These considerations effectually dispose of the claims of
respondents to the effect that no equitable cause of action is
stated and that there is an adequate remedy at law. It is
urged, however, that the action is barred by the six-year
statute of limitations. This contention is based on the
ground that the complaint shows that the stock was paid
for by the profits of the business as early as January 1, 1892,
and that this action was not commenced until after Decem-
ber 28, 1898; thus showing that more than six years have
elapsed since the cause of action accrued. A single con-
sideration, however, disposes of this claim. Under the al-
legations of the complaint, as before shown, *Morey* has been
the owner of this stock since May 8, 1889, and Johnson
simply held it as pledgee and in a certain sense as plaintiff's
trustee. It appears by the complaint that the first denial
of *Morey's* right to the stock took place in October, 1898.
Up to that time, so far as appears from the complaint, his
right to the stock was not denied, and it did not become his
duty to bring an action to establish his rights so long as

they were either admitted or not repudiated. He was not required, under his contract, to pay for the stock at any specified time. It was to be paid for primarily out of dividends *declared*, not profits earned, and it appears that there have been no dividends declared, hence it is clear that there was no time prior to the denial of his rights, in 1898, when there arose any obligation either to sue for his stock or to enforce his rights as a holder of stock. Neither his title to the stock nor his rights as a stockholder had up to that time been denied. *Wells v. Green Bay & M. C. Co.* 90 Wis. 442. The same considerations dispose of the claim that the plaintiff has been guilty of laches.

It has been noted that the contract is that the stock should be paid for in dividends *declared*, not in profits earned, and that the complaint affirmatively shows that no dividends have been declared. From this it may perhaps be argued that the court has no power to adjudge the stock paid for out of earnings, however large, because only the directors of the corporation have power to declare dividends, and they have not done so. It is undoubtedly true that the courts will not, as a general rule, interfere with the discretion of the directors of a corporation as to the declaration of a dividend; but when it appears that they are guilty of fraud or bad faith, or a wilful abuse of their discretionary powers, either in declaring or in refusing to declare a dividend, a court of equity will interfere and compel the proper action. 2 Cook, Corp. § 545; 1 Morawetz, Priv. Corp. (2d ed.), § 447. As we construe the present complaint, it is charged that the failure to declare dividends here has been in bad faith, for the purpose of defrauding the plaintiff, and we think a sufficient case is stated to call for investigation of the question by the court. Whether it may not be necessary to join the directors of the corporation as parties to the action, in order to obtain such relief, may be an important

question, but it is one which does not arise on the record before us.

The contention on the part of the administrator of the estate of O. R. Johnson that the circuit court has no jurisdiction, because any claim against the estate should have been made in the county court, cannot be sustained. It is very evident that the county court could not afford the plaintiff any adequate remedy. The action is one rightly brought to administer equitable relief, obtainable only in a court of general jurisdiction; and the right to administer that relief is not lost because the interest or right is connected with the estate of a deceased person, which is in course of administration. *Gianella v. Bigelow*, 96 Wis. 185. While the allegations of the complaint are not as full as might be desired, we think it sufficiently appears from the complaint, giving it that liberal construction to which it is entitled (Stats. 1898, sec. 2668), that the estate of O. R. Johnson, deceased, is necessarily so far connected with the subject matter of the litigation that the administrator is a proper party defendant.

*By the Court.*— Order reversed, and action remanded with directions to overrule the demurrers.

BARDEEN and DODGE, JJ., took no part.